# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF SOUTH CAROLINA
## COLUMBIA DIVISION

SAVANNAH RIVER BREWING )
COMPANY, LLC, )
                    )
       Plaintiff, )
                    ) Civil Action No.:  3:19-cv-00766-MGL
v. )
                    ) **JURY TRIAL DEMANDED**
STEEL HANDS BREWING, LLC; )
RICHARD A. SPICER, III; DARRYL )
FRICK; SCOTT LAMBERT; )
LAMBERT ARCHITECTURE + )
CONSTRUCTION SERVICES, INC.;)
EDWARD LOUIS NICKS III; )
SOUTHERN ATLANTIC )
MECHANICAL CONTRACTORS, )
LLC; H. FREEMAN BELSER; )
VANTAGE POINT REAL )
ESTATE, LLC; STEEL HANDS )
DEVELOPMENT, LLC, and )
SCOTT SHOCKLEY, )
                    )
       Defendants. )

## COMPLAINT

COMES NOW, SAVANNAH RIVER BREWING COMPANY, LLC,

Plaintiff in the above-entitled action (hereinafter "Plaintiff"), and herewith files this

COMPLAINT for damages against STEEL HANDS BREWING, LLC ("Steel

Hands"), RICHARD A. SPICER, III ("Spicer"), DARRYL FRICK ("Frick"),

SCOTT LAMBERT ("Lambert"), LAMBERT ARCHITECTURE +

CONSTRUCTION SERVICES, INC. ("LACS"), EDWARD LOUIS NICKS III ("Nicks"), SOUTHERN ATLANTIC MECHANICAL CONTRACTORS, LLC ("Samco"); H. FREEMAN BELSER ("Belser"); VANTAGE POINT REAL ESTATE, LLC ("VPRE"); and STEEL HANDS DEVELOPMENT, LLC ("SHD") (collectively "Defendants") and shows this Court as follows:

## A.     NATURE OF THE COMPLAINT

Plaintiff's dream of opening a brewery quickly became a nightmare when the Defendants: secretly misappropriated confidential trade secrets from Plaintiff's brewmaster to create a competing brewery; conspired to intentionally damage and injure Plaintiff's business; and secretly solicited the employment of Plaintiff's brewmaster to work at the competing brewery all while he was a full time employee and part-owner of Plaintiff's Brewery.  As a result, Plaintiff files the instant complaint for violations of the Defend Trade Secrets Act, the South Carolina Trade Secrets Act, Civil Conspiracy, South Carolina Unfair Trade Practices Act, Intentional Interference with Contractual Relations, Intentional Interference with Business Relationships, and Breach of Fiduciary Duty.

2

## B.    PARTIES, JURISDICTION AND VENUE

1.

Plaintiff is a limited liability company organized and existing under the laws of the State of Georgia with its principal place of business located at 813 5th Street, Augusta, Georgia 30901.

2.

Plaintiff's members are Steve Ellison, Christie Ellison, David Ellison and Patricia Ellison.

3.

Steve Ellison and Christie Ellison are residents of Georgia.

4.

David Ellison and Patricia Ellison are residents of South Carolina.

5.

Steel Hands is a limited liability company organized and existing under the laws of the State of South Carolina with its principal place of business is 2350 Foreman Street, Cayce, South Carolina 29033.

6.

Steel Hands members are Frick, Spicer, Lambert and Scott Shockley ("Shockley"), all of whom are residents of South Carolina.

7.

Frick is an individual who resides at 12 Hillwood Court, Columbia, South Carolina 29204.

8.

Lambert is an individual who resides at 2906 Blossom Street, Columbia, South Carolina 29205.

9.

Shockley is an individual who resides at 14 Otranoto Lane, Columbia, South Carolina 29209.

10.

Spicer is an individual who resides at 108 South Woodrow Street, Columbia, South Carolina 29205 and is a part-owner of LACS.

11.

LACS is a corporation incorporated in South Carolina and its principle place of business is 522 Lady Street, Columbia, South Carolina 29201.

12.

Nicks is an individual who resides at 1051 Richard Franklin Road, Chapin, South Carolina, 29036.

13.

Samco is a limited liability company organized and existing under the laws of the State of South Carolina with its principal place of business located at 3770 Fernandina Rd., Columbia, South Carolina 29210.

14.

Samco's sole member is Nicks, who is a resident of South Carolina.

15.

Belser is an individual who resides at 400 Saluda Ave., Columbia, SC 29205.

16.

VPRE is a limited liability company organized and existing under the laws of the State of South Carolina with its principal place of business located at 104 Vantage Point, Cayce, South Carolina, 29033.

17.

VPRE's members are Frick and Spicer, both of whom are residents of South Carolina.

18.

SHD is a limited liability company organized and existing under the laws of the State of South Carolina with its principal place of business located at 12 Hillwood Court, Columbia, South Carolina, 29204.

19.

SHD's members are Frick and Lambert, both of whom are residents of South Carolina.

20.

Plaintiff is informed and believes that SHD owns the building and brewing system used by Steel Hands to brew and produce beer.

21.

This Court has jurisdiction over this case given that Plaintiff's claims present Federal questions over which the Court has jurisdiction pursuant to 28 U.S.C. § 1331.

22.

Venue is proper in this District, pursuant to 28 U.S.C. §1391(b)(1), because all Defendants are residents of the State in which this District, the District of South Carolina, is located.

## C.    FACTUAL ALLEGATIONS

23.

In 2015, Plaintiff's members wished to build a brewery in Augusta, Georgia ("Plaintiff's Brewery") and enter the business of brewing beer.

24.

Despite Plaintiff's members having extensive business expertise, Plaintiff required the assistance of an individual with brewing expertise to assist them with the development and creation of Plaintiff's Brewery.

25.

In July 2015, Plaintiff hired Mark Walters ("Walters") as a full time employee as its "brewmaster" given his representation of extensive beer brewing experience to assist in the creation of an operational brewery and to create recipes/formulas for the beer to be produced by Plaintiff's brewery.

26.

Plaintiff agreed to pay Walters a weekly salary for his services, in addition to being given an ownership interest in Plaintiff's business.

27.

Upon his hiring, Walters did not invest any equity into Plaintiff's business.

28.

Plaintiff's member, David Ellison, drafted a detailed business plan for Plaintiff's Brewery, which contained proprietary business information.

29.

Plaintiff's confidential and proprietary trade secrets include, without limitation: Plaintiff's non-public financial information; Plaintiff's non-public systems, methods, techniques and processes for brewing and production of beer at Plaintiff's brewery; Plaintiff's non-public formulas/recipes for beer produced at Plaintiff's Brewery; Plaintiff's non-public sources and agreements with respect to the acquisition of raw ingredients necessary for the production of beer; Plaintiff's non-public business strategies, business documents, and all such similar information necessary for Plaintiff to conduct its business in a competitive market place.

30.

Plaintiff's confidential and proprietary trade secrets were not public and were only made available to key employees, such as Walters with a direct need to know in order to advance the Plaintiff's Brewery's objectives. Plaintiff took and continues to take reasonable measures to keep the information secret.

31.

Walters selected and ordered the equipment and raw ingredients on Plaintiff's behalf that is necessary for brewing and producing beer at Plaintiff's Brewery.

32.

Plaintiff hired Lambert, a licensed architect and Spicer, a licensed general contractor and construction manager, and the company they both own together, LACS, based on Walters' recommendation, to design and Plaintiff's Brewery so that it accommodates the specific equipment selected and ordered by Walters.

33.

Plaintiff is informed and believes that Spicer owns approximately 33% of LACS.

34.

Plaintiff paid Lambert, Spicer and LACS in excess of $100,000.00 and spent an extensive amount of time discussing Plaintiff's business with Walters, Spicer, Lambert and LACS to allow Lambert and LACS to design Plaintiff's brewery.

35.

However, Plaintiff is informed and believes that Lambert and Spicer secretly approached Walters about helping them develop Steel Hands, a brewery that would compete with Plaintiff's Brewery.

36.

Plaintiff is informed and believes that Walters, a full time employee and part owner of Plaintiff's Brewery, feared that assisting Lambert and Spicer with a competing brewery would violate his obligations to Plaintiff.

37.

Plaintiff is informed and believes that Lambert arranged for Walters to meet with Lambert's attorney and Steel Hands' general counsel, Belser, so that Belser could help convince Walters that there would be no issues with Walters working with Lambert on a competing brewery to perpetuate Steel Hands and SHD's receipt of Defendant's confidential trade secrets so that the trade secrets could be used by Steel Hands and SHD to unfairly compete with Defendant. After the meeting between Belser and Walters takes place, Walters is not charged by Belser for the advice he receives from Belser.

38.

Plaintiff is informed and believes that Lambert then paid Walters at least $3,500.00 for Walters to provide Frick, Spicer, Lambert, LACS, Spicer, Steel Hands, SHD and Belser with Plaintiff's confidential non-public information and trade secrets with respect to Plaintiff's Brewery, including trade secrets, business information and the business plan Ellison created for Plaintiff's Brewery so that such

information and trade secrets could be used by Steel Hands and SHD to unfairly compete with Plaintiff.

39.

Plaintiff is informed and believes Lambert identifies Walters as the "brewmaster" for Steel Hands' Brewery in June 2016 and also tells Walters that Steel Hands will employ his wife, Bridgette Walters, as the director of finance and adds her to the Steel Hands operating chart as such.

40.

Plaintiff is informed and believes that Lambert, through LACS, pays Walters several thousand dollars for Walters' work for Steel Hands while Walters continues to work for Plaintiff.

41.

Plaintiff is informed and believes that Frick also pays Walters cash directly for Walters' work for Steel Hands while Walters continues to work for Plaintiff.

42.

Plaintiff is informed and believes that for almost the entire year of 2016, Walters' loyalty lies with Steel Hands, despite Walters owing Plaintiff a fiduciary duty being a full time employee and part owner of Plaintiff's Brewery during this

period of time, all while earning more money in 2016 from Plaintiff than Walters had ever earned in his life.

43.

Plaintiff is informed and believes that Walters was working for Steel Hands, Plaintiff's competitor, during his employment with Plaintiff.

44.

Plaintiff is informed and believes that Walters, at the direction of Lambert, Frick, Spicer, Belser, SHD and/or Steel Hands, takes actions to slow the opening of Plaintiff's Brewery and intentionally sabotages the brewing process at Plaintiff's Brewery.

45.

Walters failed to properly design, install, or supervise the installation of a glycol system at Plaintiff's Brewery that is defective and now requires re-designed and re-installation, at a costly expense to Defendant and its members.

46.

Walters hired, directed, and supervised electricians to improperly install an electrical system in certain pumps at Plaintiff's Brewery that essentially stopped beer production.

47.

Walters failed to install or supervise the installation of weight-measuring scale system at Plaintiff's Brewery that is vital to proper beer production.

48.

Walters failed to record or keep any brewing or inventory records or failed to institute Standard Operating Procedures for brewing, packaging and inventory management at Plaintiff's Brewery, all of which are required by the United States Department of the Treasury Alcohol and Tobacco Tax and Trade Bureau. Walters' actions jeopardized Plaintiff's federal and State of Georgia licenses to operate a brewery.

49.

Plaintiff's Brewery opens in February 2017. However, the beer produced by Plaintiff's Brewery during this time is very limited, while its supplies for producing and brewing beer are extensive. The majority of the beer produced by Walters for Plaintiff's Brewery is unmarketable due to its poor quality and Plaintiff was forced to dispose of the same.

50.

Four weeks after Plaintiff's Brewery opens in February 2017, Walters resigned from his position with Plaintiff without any notice, leaving Plaintiff's Brewery and its members high and dry with no brew master at a brand new brewery

and with no one to replace Walters.  Without Walters or another brewmaster, Plaintiff did not have the knowledge regarding how to brew beer or operate the brewery.

51.

Plaintiff paid Walters for 30 days after his resignation and bought back his ownership in Plaintiff's business.

52.

Plaintiff is informed and believes that in an effort to perpetuate the trade secret misappropriation and hide Plaintiff's discovery of the same after Walters' resignation from Plaintiff's Brewery, Spicer, Steel Hands, SHD and/or Frick pays Walters initially only by cash.  Thereafter, to further hide Walters employment with Steel Hands to further perpetuate the misappropriation of Plaintiff's trade secrets, Plaintiff is informed and believes that Frick, Spicer, Lambert and/or Belser conspired with Nicks to create a scheme to pay Walters salary and health insurance benefits through Nick's plumbing company, Samco, despite the fact that Walters has no knowledge, training or experience in the plumbing trade.

53.

Additionally, to further hide Walters employment with Steel Hands to further perpetuate the misappropriation of Plaintiff's trade secrets, Plaintiff is informed and believes that Frick, Lambert and/or Belser conspired with Spicer to create a scheme

14

to pay Walters cash through Spicer and Frick's real estate company, VPRE, despite the fact that Walters has no knowledge, training or experience in the real estate market.

54.

The general counsel for Steel Hands, Belser, further conspires with Lambert, Walters, Spicer and Frick, to have Belser's friend who is an attorney admitted in Georgia, Brady R. Thomas, file a frivolous lawsuit against Plaintiff entitled *Mark Walters v. Savannah River Brewing Company, LLC*, Richmond County Superior Court Case No. 2017RCSC01336, in an effort to pilfer more of Plaintiff's trade secrets and further financially handicap Plaintiff, which is Steel Hands' competitor.

### D.    CAUSES OF ACTION

### COUNT I
### (DEFEND TRADE SECRETS ACT 18 U.S.C. § 1836, *et seq*. – AGAINST ALL DEFENDANTS)

55.

As set forth more fully above, Plaintiff's confidential and proprietary trade secrets include, without limitation: Plaintiff's non-public financial information; Plaintiff's non-public systems, methods, techniques and processes for brewing and production of beer at Plaintiff's Brewery; Plaintiff's non-public formulas/recipes for beer produced at Plaintiff's Brewery;  Plaintiff's non-public sources and agreements with respect to the acquisition of raw ingredients necessary for the production of

15

beer; Plaintiff's non-public business strategies, business documents, and all such similar information necessary for Plaintiff to conduct its business in a competitive market place.

56.

Plaintiff's trade secrets relate to products and services used in, or intended for use in, interstate commerce.

57.

Plaintiff's trade secrets are of value to Defendants, some of whom are competitors of Plaintiff, as is clearly demonstrated by the extent to which the Defendants engaged in the solicitation of Walters' employment for purposes of gathering, misappropriating, and transferring such information to Defendants and its subsidiaries and their efforts to conceal these actions.

58.

Plaintiff kept its trade secrets from disclosure through all appropriate and necessary means, such that they were not generally known or available to individuals or entities outside of Plaintiff.

59.

Plaintiff's trade secrets, revealed to Defendants through Walters, are critical to the success of Plaintiff's business.

60.

Plaintiff is informed and believes that all Defendants were aware that Plaintiff's trade secrets were not to be disclosed to others.

61.

Plaintiff is informed and believes that the Defendants knew that the information related to Plaintiff being obtained from Walters was confidential and in the nature of trade secrets and, nevertheless, Defendants actively sought Walters employment in order to receive and utilize Plaintiff's trade secrets.

62.

As further set forth above, Plaintiff is informed and believes that the Defendants misappropriated Plaintiff's trade secrets by acquiring them through unlawful means, using them to unfairly compete with Plaintiff, and in derogation of Plaintiff's interest, and continuing to retain possession of them to this day, all in violation of the Defend Trade Secrets Act, 18 U.S.C. § 1836, *et seq*.

63.

Plaintiff is informed and believes that Plaintiff's trade secrets have been transferred to and maintained on Defendants' computers and other devices and remain in the possession of the Defendants.

64.

As a direct and proximate cause of Defendants' wrongful conduct, Plaintiff has suffered and will continue to suffer financial losses, imminent and permanent irreparable harm, loss of the confidentiality of their trade secrets, loss of goodwill, loss of business opportunities, and other continuing harm.

65.

The losses and harm to Plaintiff is ongoing and cannot be remedied by damages alone.

66.

Defendants have acted willfully, maliciously, and with reckless disregard to the rights of Plaintiff, entitling Plaintiff to exemplary damages and recovery of its reasonable attorneys' fees.

67.

Plaintiff demands judgment in their favor for Defendants' violation of the Defend Trade Secrets Act, and request actual damages, in addition to the economic benefit realized by Defendants as a result of their misappropriations resulting in unjust enrichment, preliminary and permanent injunctive relief, including, but not limited to, the immediate return of all of Plaintiff's confidential and proprietary

business information, an Order directing all Defendants to refrain from using such confidential information, attorneys' fees, and such other and further relief available under the Defend Trade Secrets Act as this Court deems just.

## COUNT III
## (SOUTH CAROLINA TRADE SECRETS ACT – AGAINST ALL DEFENDANTS)

68.

Plaintiff incorporates by reference and re-alleges each and every preceding paragraph of this complaint as if restated completely herein.

69.

As set forth more fully above, Plaintiff's confidential and proprietary trade secrets include, without limitation: Plaintiff's non-public financial information; Plaintiff's non-public systems, methods, techniques and processes for brewing and production of beer at Plaintiff's brewery; Plaintiff's non-public formulas/recipes for beer produced at Plaintiff's Brewery - all of which constitute trade secrets as defined by S.C. Code Ann. § 39-8-20 (5).

70.

S.C. Code Ann. § 39-8-30 provides in relevant part:

(B) Every employee who is informed of or should reasonably have known from the circumstances of the existence of any employer's trade secret has a duty to refrain from using or disclosing the trade secret without the employer's permission independently of and in addition to any written contract of employment, secrecy agreement, noncompete

agreement, nondisclosure agreement, or other agreement between the employer and the employee.

(C) A person aggrieved by a misappropriation, wrongful disclosure, or wrongful use of his trade secrets may bring a civil action to recover damages incurred as a result of the wrongful acts and to enjoin its appropriation, disclosure, use, or wrongful acts pertaining to the trade secrets.

71.

Walters, a full time employee of Plaintiff, owed a duty to Plaintiff to refrain from disclosing Plaintiff's trade secrets per S.C. Code Ann. § 39-8-30(B) and Plaintiff is informed and believes that Walters breached this duty when he wrongfully disclosed Plaintiff's trade secrets to Defendants.

72.

Plaintiff is informed and believes that Defendants misappropriated Plaintiff's trade secrets by acquiring Plaintiff's trade secrets by improper means through Walters and knew or had reason to know that Plaintiff's trade secrets were acquired by improper means, which violates the South Carolina Trade Secrets Act, including but not limited to, S.C. Code Ann. § 39-8-30 (C).

73.

Plaintiff demands judgment in their favor for Defendants' violation of the South Carolina Trade Secrets Act, and request actual damages incurred as a result of the wrongful acts and to enjoin defendant's misappropriation, disclosure, use, and

wrongful acts pertaining to the trade secrets and such other and further relief available under the South Carolina Trade Secrets Act as this Court deems just.

## COUNT III
## (CIVIL CONSPIRACY – AGAINST ALL DEFENDANTS)

74.

Plaintiff incorporates by reference and re-alleges each and every preceding paragraph of this complaint as if restated completely herein.

75.

Frick, Lambert, Spicer, VPRE, LACS, Steel Hands, SHD, Belser, Nicks and Samco met, conspired and schemed to misappropriate Plaintiff's trade secrets and injure Plaintiff's business.

76.

Plaintiff is informed and believes that in furtherance of the conspiracy, Plaintiff is informed and believes that Lambert communicated with Belser and arranged for Walters to meet with Belser, so that Belser could help convince Walters that there would be no issues or conflicts with Walters working with Lambert on a competing brewery to perpetuate Defendant's trade secret misappropriation. After the meeting between Belser and Walters takes place, Walters is not charged by Belser for the advice he receives from Belser.

77.

In furtherance of the conspiracy, Plaintiff is informed and believes that in an effort to perpetuate the trade secret misappropriation and hide Plaintiff's discovery of the same, Steel Hands, SHD, Lambert and/or Frick pays Walters initially only by cash. Thereafter, to further perpetuate Defendants' trade secret misappropriation and Walters employment with Steel Hands, Plaintiff is informed and believes that Frick and Lambert conspired with Nicks to create a scheme to pay Walters salary and health insurance benefits based on his employment with Steel Hands, through Nick's plumbing company, Samco, in furtherance of the conspiracy, despite the fact that Walters has no knowledge, training or experience in the plumbing trade.

78.

Additionally, in furtherance of the conspiracy, Plaintiff is informed and believes that in an effort to perpetuate the trade secret misappropriation and hide Plaintiff's discovery of the same, Plaintiff is informed and believes that Frick, Lambert and/or Belser conspired with Spicer to create a scheme to pay Walters cash through Spicer and Frick's real estate company, VPRE, despite the fact that Walters has no knowledge, training or experience in the real estate market.

79.

In furtherance of the conspiracy, Plaintiff is informed and believes that Lambert, Belser, Frick. Walters, SHD and/or Steel Hands improperly and

22

unjustifiably conspired to interfere with the opening of Plaintiff's Brewery and intentionally sabotaged the brewing process at Plaintiff's Brewery resulting in the majority of the beer produced by Walters for Plaintiff's Brewery being unmarketable due to its poor quality and Plaintiff was forced to discard of the same.

80.

In furtherance of the conspiracy, Plaintiff is informed and believes that the general counsel for Steel Hands, Belser, further conspired with Lambert, Walters and Frick to file a frivolous lawsuit against Plaintiff entitled *Mark Walters v. Savannah River Brewing Company, LLC*, Richmond County Superior Court Case No. 2017RCSC01336, in an effort to learn additional information about and further handicap Plaintiff, Steel Hands' competitor.

81.

Plaintiff is informed and believes that Defendants joined with a purpose of foreseeably causing injury to Plaintiff, engaging in overt acts pursuant to a common design, which proximately caused Plaintiff special damage as a result of a common design between Defendants.

82.

Plaintiff has been harmed by Defendants' conspiracy resulting in special damage to the Plaintiff, including but not limited to, tangible losses and/or injuries to the Plaintiff's business and occupation.  By way of example, such specific amounts

of special damage losses include, but are not limited to, $48,169.53 in legal fees to date to defend itself from the frivolous Richmond County Superior Court action, and at least approximately $5,000.00 from the sabotage of the opening of Plaintiff's brewery which include the costs of raw, unused ingredients to brew beer that went unused and the costs associated with the production of beer that was of such poor quality it was unable to be sold and had to be discarded, and other acts to be shown through the course of discovery and at trial.

83.

The common actions between Frick, Lambert, Spicer, VPRE, LACS, Steel Hands, SHD, Belser, Nicks and Samco resulted in direct and proximate injury to Plaintiff. Plaintiff has suffered damages because Frick, Lambert, Spicer, VPRE, LACS, Steel Hands, SHD, Belser, Nicks and Samco conspired to create a process and/or procedure for misappropriating Plaintiff's trade secrets and took steps to sabotage Plaintiff's business and render Plaintiff's products unmarketable. The acts of Frick, Lambert, Spicer, VPRE, LACS, Steel Hands, SHD, Belser, Nicks and Samco directly and proximately resulted in special and additional damages which go beyond the damages asserted in other counts of this complaint.

## COUNT IV
## (SOUTH CAROLINA UNFAIR TRADE PRACTICES ACT – AGAINST FRICK, LAMBERT, SHD AND STEEL HANDS)

84.

Plaintiff incorporates by reference and re-alleges each and every preceding paragraph of this complaint as if restated completely herein.

85.

Frick, Lambert, SHD and Steel Hands' conduct constitutes unfair and deceptive trade practices and is a violation of the South Carolina Unfair Trade Practices Act, SC Code Ann. § 39-5-10, et seq.  Furthermore, Frick, Lambert, SHD and Steel Hands' conduct was willful.

86.

At all times relevant herein, Frick, Lambert, SHD and Steel Hands engaged in the business of brewing beer, and placing the beer into the stream of commerce.

87.

Frick, Lambert, SHD and Steel Hands were engaged in commerce as defined by the South Carolina Unfair Trade Practices Act, SC Code Ann. § 39-5-10, et seq.

88.

Frick, Lambert, SHD and Steel Hands' activities, including but not limited to, the utilization of Plaintiff's systems, methods, techniques and processes for brewing and production of beer at Plaintiff's brewery placed into the stream of commerce, coupled with Frick, Lambert and use of Plaintiff's formulas/recipes for beer produced at Plaintiff's Brewery which were placed into the stream of commerce, and other acts to be shown through the course of discovery and at trial, constitute unlawful and unfair methods of competition and/or unfair or deceptive acts or practices in the conduct of trade and/or commerce and has been repeated and is capable of repetition.

89.

Frick, Lambert, SHD and Steel Hands' conduct affects the public interest.

90.

Frick, Lambert, SHD and Steel Hands' knew or should have known that its actions constituted unfair and deceptive trade practices.

91.

As a direct, foreseeable, and proximate result of Frick, Lambert and Steel Hands' unfair and deceptive trade practices, the Plaintiff has suffered an ascertainable loss of money and property.

92.

The Plaintiff is entitled to recover its actual damages, which amount should be trebled, together with interest, costs and attorneys' fees and such other and further relief available under the South Carolina Unfair Trade Practices Act as this Court deems just.

## COUNT V
## (SOUTH CAROLINA UNFAIR TRADE PRACTICES ACT – AGAINST LACS)

93.

Plaintiff incorporates by reference and re-alleges each and every preceding paragraph of this complaint as if restated completely herein.

94.

LACS' conduct constitutes unfair and deceptive trade practices and is a violation of the South Carolina Unfair Trade Practices Act, SC Code Ann. § 39-5-10, et seq. Furthermore, LACS' conduct was willful.

95.

At all times relevant herein, LACS engaged in the business of providing architectural design services and construction management services into the stream of commerce.

96.

LACS was engaged in commerce as defined by the South Carolina Unfair Trade Practices Act, SC Code Ann. § 39-5-10, et seq.

97.

LACS activities, including but not limited to, receiving extensive amounts of money in exchange for LACS providing architectural and construction services associated with the development and construction of Plaintiff's brewery which were placed into the stream of commerce, then utilizing such designs and information funded by LACS to develop and construct a competing brewery to place products into the stream of commerce, and other acts to be shown through the course of discovery and at trial, all of which constitute unlawful and unfair methods of competition and/or unfair or deceptive acts or practices in the conduct of trade and/or commerce and are capable of repetition.

98.

LACS' conduct affects the public interest.

99.

LACS' knew or should have known that its actions constituted unfair and deceptive trade practices.

100.

As a direct, foreseeable, and proximate result of LACS' unfair and deceptive trade practices, the Plaintiff has suffered an ascertainable loss of money and property to be determined at trial.

101.

The Plaintiff is entitled to recover its actual damages, which amount should be trebled, together with interest, costs and attorneys' fees and such other and further relief available under the South Carolina Unfair Trade Practices Act as this Court deems just.

## COUNT VI
## (INTENTIONAL/TORTIOUS INTERFERENCE WITH CONTRACTUAL RELATIONS – AGAINST ALL DEFENDANTS)

102.

Plaintiff incorporates by reference and re-alleges each and every preceding paragraph of this complaint as if restated completely herein.

103.

Plaintiff and Walters entered into a valid and enforceable contracts in 2015 known as the Operating Agreements.

104.

Plaintiff is informed and believes that Defendants were all well aware of the contracts between Plaintiff and Walters.

105.

Plaintiff is informed and believes that Defendants have each independently and collectively acted to intentionally and unjustifiably induce and/or procure a breach of those contracts, without justification.

106.

The subsequent breach of contracts was caused by defendant's unlawful conduct.

107.

Plaintiff has suffered damages as a result of Defendants intentional interference with contractual relations.

**COUNT VII**
**(INTENTIONAL INTERFERENCE WITH BUSINESS RELATIONSHIPS - ALL DEFENDANTS)**

108.

Plaintiff incorporates by reference and re-alleges each and every preceding paragraph of this complaint as if restated completely herein.

109.

Plaintiff had a reasonable expectation of entering and maintaining a valid business relationship with potential customers of Plaintiff's Brewery and suppliers to sell beer produced by Plaintiff's Brewery.

110.

Plaintiff is informed and believes that Defendants were all well aware of Plaintiff's expectancy.

111.

Plaintiff is informed and believes that Defendants purposefully and intentionally interfered to prevent Plaintiff's legitimate expectancy from ripening into valid business relationships.

112.

Plaintiff has suffered damages as a result of Defendants intentional interference with business relationships.

**COUNT VIII**
**(BREACH OF FIDUCIARY DUTY – AGAINST LAMBERT, SPICER AND LACS)**

113.

Plaintiff incorporates by reference and re-alleges each and every preceding paragraph of this complaint as if restated completely herein.

114.

Plaintiff hired Lambert, a licensed architect and Spicer, a licensed general contractor and construction manager, and the company they both own together,

LACS, based on Walters' recommendation, to design and build Plaintiff's Brewery so that it accommodates the specific equipment selected and ordered by Walters.

115.

As such, a fiduciary duty existed between Plaintiff, Lambert, Spicer and LACS. Lambert, Spicer and LACS' positions required Lambert, Spicer and LACS to act with the utmost good faith and loyalty for the benefit of Plaintiff.  Lambert, Spicer and LACS were bound to act in good faith and with due regard to the interests of Plaintiff.

116.

However, Plaintiff is informed and believes that Lambert, Spicer and LACS carried out a consistent course of conduct to: pilfer the design and construction of Plaintiff's Brewery to be used to construct a competing brewery, Steel Hands and SHD, owned by Lambert and Frick; and to solicit, and did in fact solicit, the employment of Walters from Plaintiff so Lambert, Frick and LACS could misappropriate Plaintiff's confidential trade secrets.

117.

Plaintiff is informed and believes that Lambert, Spicer and LACS undertook the aforementioned conduct at a time when Lambert, Spicer and LACS were supposed to have been working for Plaintiff, which constitutes a breach of the duty of loyalty and breach of fiduciary duty to Plaintiff.  As a direct and proximate result

of Lambert, Spicer and LACS' breaches, Plaintiff suffered and continues to suffer, great damages, including harm to its business, in an amount to be determined according to proof at trial.

118.

Plaintiff is informed and believes that Lambert, Spicer and LACS undertook the aforementioned acts maliciously, fraudulently, and oppressively, with the wrongful intention of injuring Plaintiff, from an improper and evil motive amounting to malice, and in conscious disregard of Plaintiff's rights. Plaintiff is thus entitled to recover punitive damages from Lambert, Spicer and LACS in an amount according to proof at trial.

WHEREFORE, having fully set forth its complaint, Plaintiff hereby prays for the following relief from this Honorable Court:

1.    That the Court enter judgment in favor of Plaintiff as to each of Plaintiff's claims;

2.    For trial by full jury;

3.    For damages Plaintiff has incurred in an amount to be determined according to proof at trial, but which is in excess of at least $4,000,000.00, including, but not limited to, treble damages pursuant to S.C. Code Ann. §39-5-140;

4.    For all costs, expenses and fees associated with this action, including

       reasonable attorneys' fees pursuant to S.C. Code Ann. §39-5-140;

5.    For all pre-judgment interest on Plaintiff's damages;

6.    For punitive or exemplary damages against Defendants per 18 U.S.C.

       § 1836, *et seq.*, in an amount determined by the enlightened conscience

       of the jury; and

For such other and further relief as this Honorable Court deems just and proper.


Submitted this 13th day of March 2019.

                                              **GORDON REES SCULLY**
                                              **MANSUKHANI LLP**

                                               /s/ A. Victor Rawl, Jr.
                                              A. Victor Rawl, Jr.
                                              SC Bar No. 9261 / Fed ID: 6971
                                              Chad A. Shultz
                                              GA Bar No. 644440*
                                              Vernon Phillip Hill IV
                                              GA Bar No. 637841*

                                              *Attorneys for Savannah River Brewing*
                                              *Company, LLC*

                                              *To be admitted Pro Hac Vice

40 Calhoun Street
Suite 350
Charleston, SC 29401
Phone: (843) 278-5900
vrawl@grsm.com

3455 Peachtree Road NE, Suite 1500
Atlanta, Georgia 30326
Telephone: (404) 869-9054
cshultz@grsm.com
phill@grsm.com